UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:22-cv-61279-KMM

ROGER TAYLOR, JOHN TAYLOR,
SIMON LE BON, and NICHOLAS RHODES,

      Plaintiffs,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

      Defendants.

_____/

**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE
AND MEMORANDUM OF LAW ESTABLISHING THAT JOINDER IS PROPER**

      Plaintiffs, Roger Taylor, John Taylor, Simon LeBon, and Nicholas Rhodes (collectively, "Plaintiffs"), by undersigned counsel, hereby respond to this Court's July 27, 2022 Order to Show Cause (ECF No. 4), and in support thereof, respectfully refer this Court to the following Memorandum of Law:

**MEMORANDUM OF LAW**

**I.    INTRODUCTION**

      This action has been filed by Plaintiffs to combat e-commerce store operators who trade upon Plaintiffs' reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Plaintiffs' federally registered trademarks (the "Counterfeit DURAN DURAN Products"). As part of a coordinated effort to sell Counterfeit DURAN DURAN Products, Defendants operate under Internet based e-commerce stores and fully interactive commercial Internet websites operating under the seller identification names set forth on Schedule "A" to the Complaint (the "Seller IDs"), Compl. (ECF No. 1) at ¶ 1,

and use these Seller IDs, as well as other unknown aliases, to conceal their identities and further their counterfeiting efforts, *id.* at ¶¶ 15 and 20. Defendants take advantage of this anonymity, as well as the mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiffs' trademark rights and exploit U.S. consumers. *Id.* at ¶ 13.

Plaintiffs face a "swarm of attacks" on its trademark rights, and "filing individual causes of action against each counterfeiter ignores the form of harm" that Plaintiffs face. *Bose Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 334 F.R.D. 511, 517 (N.D. Ill. 2020). Joinder is proper because Fed. R. Civ. P. 20's inclusion of the term "occurrence" allows a plaintiff to join in a single case the defendants who commonly participate in such unlawful occurrences. *Id.; see also Chrome Cherry Limited v. Partnerships and Unincorporated Associations Identified on Schedule "A"*, Case No. 21-cv-05491, 2021 WL 6752296, at *1 ("the Court finds that although Plaintiff has not sufficiently demonstrated that the asserted claims arise out of the same transaction or series of transactions, Plaintiff has sufficiently demonstrated that they arise out of the same occurrence or series of occurrences. Therefore, joinder of the "Schedule A" Defendants is proper at this preliminary stage. FED. R. CIV. P. 20(a)(2)(A). The Court additionally notes that no Defendants are prejudiced by permitting joinder at this juncture."); *see also Oakley, Inc. v. The Partnerships, et al.*, No. 1:20-cv-05972 (N.D. Ill. Nov. 9, 2020) (unpublished) (ECF No. 27) (same); *Loewe S.A., Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, 1:20-cv-07185 (N.D. Ill. Dec. 18, 2020) (ECF No. 26) (same).

The well-pleaded allegations in Plaintiffs' Complaint establish that Defendants are working in a similar manner to sell Counterfeit DURAN DURAN Products, as part of the same "occurrence" of mass harm, *i.e.*, the swarm of all Defendants attacking Plaintiffs' federally

registered trademarks at once. *Bose Corp.*, 334 F.R.D. at 516. As demonstrated throughout this memorandum, the majority of district courts agree that this establishes a logical relationship supporting joinder. Joinder at this stage is consistent with ***hundreds*** of factually similar cases and comports with the strongly encouraged policy of "entertaining the broadest possible scope of action consistent with fairness to the parties." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).[1]

Further, cases like the matter at hand have proven effective at substantially reducing online counterfeiting and infringement and preventing consumer confusion. Indeed, the gravity of these cases was recently addressed by Executive Order 13904, a copy of which is attached hereto as **Exhibit 1**. "It is the policy of the United States Government to protect consumers, intellectual property rights holders, businesses, and workers from counterfeit goods … and other contraband now being introduced into the United States as a result of the recent growth in e-commerce." *See* Executive Order 13904 of January 31, 2020. It is also "***the policy of the United States Government to ensure that parcels containing contraband be kept outside of the United States to the greatest extent possible and that all parties who participate in the introduction or attempted introduction***

---

[1] As this Court noted, "[t]rademark infringement actions such as this have become increasingly prevalent in the Southern District of Florida in recent years, and have routinely been permitted." July 27, 2022 Order (ECF No. 4). Indeed, in the past several years, similar cases have been filed and permitted to proceed by thirteen (13) district court judges in this district. Similar cases against multiple e-commerce store seller aliases have been filed across the country for nearly a decade. *See, e.g. Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd., et al.,* No. 4:10 CV 2672 (S.D. Tex. Aug. 2, 2010); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.,* No. 10 CIV 1630 (S.D.N.Y. Mar. 16, 2010); *Volvo Car Corporation, et al. v. The Unincorporated Associations Identified in Schedule A*, No. 18-cv-00977 (E.D. Va. Feb. 6, 2019); *CCA and B, LLC v. Douyong toy, et al.*, No. 19-cv-01851 (N.D. Ga. Apr. 25, 2019); *Talavera Hair Products, Inc. v. Taizhou Yunsung Elec. Appliance Co., Ltd., et al.*, No. 18-cv-00823 (S.D. Ca. Apr. 30, 2018), including hundreds of cases in the Southern District of New York and the Northern District of Illinois.

***of such parcels into the United States be held accountable under the laws of the United States***." *Id.* (emphasis added).

The Department of Homeland Security ("DHS") has further weighed in on the systematic counterfeit activities that are now rampant throughout online platforms. *See* January 24, 2020 report titled *Combating Trafficking in Counterfeit and Pirated Goods prepared by the U.S. Department of Homeland Security, Office of Strategy, Policy & Plans* ("Homeland Security Report"), a copy of which is attached hereto as **Exhibit 2**.

Specifically, the DHS reported that "American consumers shopping on e-commerce platforms and online third-party marketplaces now face a significant risk of purchasing counterfeit or pirated goods." Homeland Security Report at p. 7. The Acting Secretary stated as follows:

> The rapid growth of e-commerce has revolutionized the way goods are bought and sold, allowing for counterfeit and pirated goods to flood our borders and penetrate our communities and homes. Illicit goods trafficked to American consumers by e-commerce platforms and online third-party marketplaces threaten public health and safety, as well as national security. This illicit activity impacts American innovation and erodes the competitiveness of U.S. manufacturers and workers. *Id.* at p. 3.

In addition to the DHS, the Organisation for Economic Cooperation and Development ("OECD") reports that "E-commerce platforms represent ideal storefronts for counterfeits and provide powerful platform[s] for counterfeiters and pirates to engage large numbers of potential consumers." *See* OECD (2018), *Governance Frameworks to Counter Illicit Trade*, Illicit Trade, OECD Publishing, Paris, https://doi.org/10.1787/9789264291652-en. The OECD also reports that "international trade in counterfeit and pirated goods amounted to as much as $509 billion in 2016. This represents a 3.3 percent increase from 2013 as a proportion of world trade." Homeland Security Report at p. 8. This dramatic increase has been made possible because online

marketplaces can quickly and easily establish authentic looking "store-fronts" to compete with legitimate businesses.

The DHS has also commented on the ease through which these counterfeiters can conceal their identities and relationships between various storefronts:

> ***Platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, nor to link one seller profile to other profiles owned by that same business, or by related businesses and owners***. In addition, the party that appears as the seller on the invoice and the business or profile that appears on the platform to be the seller, may not always be the same.
>
> ***This lack of transparency <u>allows one business to have many different profiles that can appear unrelated</u>***. It also allows a business to create and dissolve profiles with greater ease, which can obfuscate the main mechanism that consumers use to judge seller credibility, namely reviews by other buyers. *Id.* at p. 39 (emphasis added).

The foregoing policies not only demonstrate the importance of using cases like the matter at hand to assist in combatting these online counterfeiting networks, but more importantly (for purposes of this Response), demonstrate the extraordinary difficulties trademark owners face when attempting to identify the relationship between various storefronts engaging in the same counterfeiting or infringing conduct.

## II.    ARGUMENT

### A.    Standard for Permissive Joinder Under Fed. R. Civ. P. 20(a)

The Supreme Court has stated that under the Federal Rules of Civil Procedure, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012) (quoting *Gibbs*, 383 U.S. at 724).  Above all, "***[j]oinder of parties is generally encouraged in the interests of judicial economy***, subject to fulfillment of two prerequisites: (1) the persons who are joined as plaintiffs must be interested in claims that arise

out of the same transaction or occurrence, or series of transactions or occurrences; and (2) all the parties joined must share in common at least one question of law or fact." *Gittens v. School Bd. Of Lee County.*, Case No: 2:16–cv–412–FtM–99MRM, 2018 WL 839242, at *1 (M.D. Fla. Feb. 13, 2018) (citing *Alexander v. Fulton County,* 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled other grounds, Manders v. Lee,* 338 F.3d 1304 (11th Cir. 2003)) (emphasis added).

As to the first prong of Fed. R. Civ. P. 20(a)(2), courts have applied this "transaction or occurrence" requirement using a "case-by-case approach" based on a "flexib[le] . . . standard [that] enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding under the provisions of Rule 20." *See In re EMC Corp.*, 677 F.3d at 1358 (citing 7 Charles Alan Wright et al., Federal Practice and Procedure § 1653 (3d ed. 2001)). In analyzing whether parties are properly joined under Rule 20, "the term 'transaction' is a world of flexible meaning that 'may comprehend a series of many occurrences, depending not as much upon their immediateness of their connection as upon their logical connection.'" *El Fakih v. Nissan North America, Inc.*, Case No. 18-cv-60638-BLOOM/Valle, 2018 WL 4193675, at *3 (S.D. Fla. July 26, 2018) (quoting *Gonzalez v. Batsmasian*, 320 F.R.D 580, 581 (S.D. Fla. 2017); *Alexander*, 207 F.3d at 1323).

Fed. R. Civ. P. 20 similarly does not define "occurrence" and courts have not considered the meaning of "occurrence" apart from the meaning of "transaction." *Bose Corp.*, 334 F.R.D. at 516. However, "canons of construction ordinarily suggest that terms connected by a disjunctive . . . be given separate meanings," and the dictionary definitions suggest that "occurrence" is much broader than "transaction." *Id.* An "occurrence" is defined as something that simply happens or appears, and is not necessarily the product of joint or coordinated action. *Id. See also Oakley, Inc.*, Case No. 1:20-cv-05972 (unpublished) (ECF No. 27) ("Plaintiff has sufficiently demonstrated that

[the asserted claims] arise out of the same occurrence or series of occurrences"); *Loewe S.A.*, 1:20-cv-07185 (ECF No. 26) (same).

Moreover, "to satisfy the commonality prong for proper joinder, all that is required is that the plaintiffs share a single common question of law or fact." *El Fakih*, 2018 WL 4193675, at *3 (citing *Alexander*, 207 F.3d at 1324; *Beckford v. Dep't of Corrs.*, Case No. 06–14324–CIV 2008 WL 8192939, at *2 (S.D. Fla. Apr. 29, 2008) (holding the commonality prong satisfied when the plaintiffs brought their claims under the same statute).

### B.  Plaintiffs' Well-Pled Allegations Establish the First Prong of Federal Rule 20.

"When assessing whether the requirements of Rule 20(a)(2) are satisfied, the factual allegations in the plaintiff's complaint are accepted as true." *Malibu Media LLC v. Does 1-28*, 295 F.R.D. 527, 531 (M.D. Fla. 2012) (citing *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009)). "Rule 20 must be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." *Id.* (citing Fed. R. Civ. P. 1).

Here, Plaintiffs' well-pleaded allegations establish that the Defendant Seller ID's are all operating in the same transaction, occurrence, or series of transactions or occurrences and, therefore, joinder is proper.  Specifically, the Complaint alleges that this action was initiated "in order to combat the ***indivisible harm*** caused by the ***combined actions of Defendants*** and others engaging in ***similar conduct***."  Compl. at ¶ 3 (emphasis added).  The Complaint further alleges that the Defendant Seller ID's, all of whom are of "unknown makeup" and residing in foreign jurisdictions in their efforts to conceal their identities, redistribute products from "the same or similar sources" and ship those products to fulfillment centers in the U.S. *Id.* at ¶ 13.  All of these Defendants have registered their Seller ID's with similar online platforms for the purpose of engaging in counterfeiting activities. *Id.* at ¶¶ 16 and 17.  The Complaint further alleges that the

Defendant Seller ID's use payment and financial accounts associated with the online storefronts "to accept, receive, and deposit profits from Defendants' trademark and counterfeiting and infringing and unfairly competing activities …", *id.* at ¶ 37, and further, that these ill-derived assets are easily transferred or concealed to avoid a favorable monetary award to Plaintiff, *id*. at ¶ 38."

The foregoing allegations are not limited to common facts relating to the similarity of the marks at issue and evidence supporting Plaintiffs' claims (which are more applicable to the second prong of the Rule 20 inquiry), but more importantly, demonstrate that these groupings of Defendants are all engaging in the same systematic approach of establishing an esoteric online storefront to redistribute illegal products from the same or similar sources while maintaining financial accounts that the Defendant can easily conceal to avoid any real liability for their actions. In sum, Plaintiffs' specific factual allegations that Defendants are working in a similar manner to sell Counterfeit DURAN DURAN Products collectively in the same "occurrence of mass harm" show a logical relationship supporting joinder. *Bose Corp.*, 334 F.R.D. at 516.

Further, even if Defendants are not directly coordinating, Plaintiffs' allegations establish that Defendants "take advantage of a set of circumstances – the anonymity and mass reach afforded by the internet and the cover afforded by international borders – to violate [Plaintiff's] trademarks with impunity." *Id.* "[I]t is plausible that Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they do not engage in direct communication or coordination." *Id.* Defendants are alleged to be infringers, and "want to blend in to cause consumer confusion." *Id.* at 514. It is not possible to link all or clusters of internet stores together using arbitrary commonalities. Homeland Security Report at p. 39.

Also of critical importance is that evidence obtained frequently demonstrates that many of the seller IDs identified as Defendants in the initial pleading are often operated by ***the same person***

*or persons*, even across different online platforms. *See, e.g.*, **Exhibit 3** (showing exemplary commonalities between different listings). Plaintiffs are not required to show and provide evidence that each of the Defendant Seller ID's is commonly owned at the pleading stage.[2] Such linking efforts are extremely cumbersome and time consuming (if not impossible without first receiving seller data from the various online platform through which Defendant attempt to conceal their activities) and is not required by Fed. R. Civ. P. 20 to join multiple Defendant Seller ID's at the pleading stage, especially without adversarial presentation and the opportunity to conduct discovery.

      **C.    Plaintiffs' Well-Pled Allegations Also Establish the Second Prong of Federal Rule 20.**

Plaintiffs' well-pleaded allegations also satisfy Fed. R. Civ. P. 20(a)(1)(B), which provides that joinder is proper if "any question of law or fact common to all defendants will arise in the action." In this case, Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the DURAN DURAN Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit DURAN DURAN Products into the United States and Florida over the Internet. Compl. at ¶¶ 1, 7, 15, 20, and 28-36. In addition, the methods Plaintiffs use to investigate, uncover, and collect evidence about any infringing activity will be the same or similar for each Defendant. Each Defendant may later

---

[2] Plaintiffs have endeavored to more specifically identify these defendants through Schedule A to the Complaint, rather than permissibly proceeding with identifying each as a fictious Doe. "As a general matter, fictitious-party pleading is not permitted in federal court. [The 11th Circuit] has created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Here, it would be permissible for Plaintiffs' initial pleading to simply identify each defendant as a Doe, but Plaintiffs have gone even further and identified these sellers with sufficient specificity that the online platforms can act upon any preliminary or final relief ordered by this Court. By either route, the initial pleading should not be dismissed under Rule 20.

present different factual evidence to support individual legal defenses, but "[p]rospective factual distinctions, however, will not defeat the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B) at this stage in the litigation." *First Time Videos, LLC v. Does 1–500*, 276 F.R.D. 241, 252 (N.D. Ill. 2011).

> **D.     The Authority Cited in This Court's Order is Distinguishable and Contrary to the Overwhelming Majority View Even by Those Courts.**

Through its July 27, 2022 Order, this Court cites two specific opinions addressing joinder. (ECF No. 4 (citing *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672 (S.D. Fla. 2011); *Estee Lauder Cosms. Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 182 (N.D. Ill. 2020)).

With respect to *Liberty Media Holdings*, that case involved the joinder of defendants downloading the same asserted copyrighted work using BitTorrent technology. *Id.* at 674. As noted in that case, the only common action taken by the defendants in cases like *Liberty Media Holdings* (*i.e.*, BitTorrent cases), is the defendants clicking "on a command to participate in the BitTorrent Protocol…." *Id.* (quoting *Hard Drive Prods., Inc. v. Does 1–188*, 809 F. Supp. 2d 1150, 1163 (N.D. Ca. 2011)). Unlike the matter at hand, these BitTorrent cases do not involve defendants that are all engaging in a systematic approach of establishing an esoteric online storefront to redistribute illegal products from the same or similar sources while maintaining financial accounts that the Defendant can easily conceal to avoid any real liability for their actions. Unlike the mere click of a button to download an allegedly copyrighted work, the matter at hand involves a detailed network of online platforms and sellers that are engaged in the same illicit conduct which the DHS has warned is now a threat to public safety and national security. *See* Homeland Security Report at p. 3.

This Court also cites to *Estée Lauder Cosmetics Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 182, 184 (N.D. Ill. 2020). The narrow approach in *Estee Lauder* does not permit joinder of any defendants. Rather, it requires that a plaintiff show that multiple e- commerce store seller aliases are operated by the same individual or entity, *i.e.*, a single defendant. The information required to meet such a stringent requirement is typically not available prior to court ordered discovery, and even if it was, could easily be circumvented by defendants using false or different information.

Further, *Estee Lauder* relies on distinguishable authority, wherein the defendants were known corporations or entities. *See Slep-Tone Entm't Corp. v. Roberto*, 2013 WL 5748896, at *2-3 (N.D. Ill. Oct. 22, 2013) (defendants were identifiable, distinct individuals and restaurants providing karaoke entertainment); *ThermaPure, Inc. v. Temp-Air, Inc.,* 2010 WL 5419090, at *4 (N.D. Ill. Dec. 22, 2010) (severing case with defendants that were identifiable corporations and entities); *Spread Spectrum Screening, LLC v. Eastman Kodak Co.,* 2010 WL 3516106, at *2 (N.D. Ill. Sept. 1, 2010) (same); *SB Designs v. Reebok Int'l, Ltd.,* 305 F. Supp. 2d 888, 892 (N.D. Ill. 2004) (same).

Unlike the matter at hand, the authority cited by *Estee Lauder* simply does not involve defendants, the specific identity of which, are incapable of being known at the preliminary stages of the proceeding, while simultaneously working in a similar manner as part of the same "occurrence" of mass harm to the plaintiff. Indeed, subsequent decisions from the Northern District of Illinois involving the same circumstances as the matter at hand have considered the court's decision in *Estee Lauder* and still found joinder was appropriate. *See Pink Floyd (1987) Limited v. Partnerships and Unincorporated Associations Identified on Schedule "A"*, Case No. 21-cv-04406, 2021 WL 7179622, at *1 (N.D. Ill. Oct. 21, 2021) (noting the court's prior decision

11

in *Estee Lauder* and nevertheless holding that "Plaintiff has sufficiently demonstrated that [Plaintiff's allegations] arise out of the same occurrence or series of occurrences … at this preliminary stage.") *Chrome Cherry Limited*, 2021 WL 6752296, at *1 (same).

      **E.**      **Joinder is Consistent with Fairness, Convenience, and Judicial Economy.**

Joinder at this stage also serves the important interests of convenience and judicial economy, leading to a just, speedy, and inexpensive resolution for Plaintiffs, Defendants, and this Court. Joinder does not create any unnecessary delay nor does it prejudice any party. On the other hand, severance is likely to cause delays and prejudice Plaintiffs and Defendants alike. Plaintiffs anticipate that these foreign Defendants will be individually subject to default, and there is no prejudice to any defaulting defendant, whose liability may be established upon default irrespective of the presence of any other defendant. *See Pink Floyd (1987) Limited,* 2021 WL 7179622, at *1 ("The Court additionally notes that no Defendants are prejudiced by permitting joinder at this juncture."); *Chrome Cherry Limited,* 2021 WL 6752296, at *1 (same).

The resources of the Court, other judges in this District, and other Districts will be substantially taxed if Plaintiffs' claims against Defendants are severed into one lawsuit per infringing seller. "Requiring the filing of separate complaints could flood the courts with thousands of additional single defendant Lanham Act cases, with no difference in resolution of nearly every case in a practical sense. The only thing that will inevitably occur is the slowdown of adjudications of other lawsuits, or the decrease of filings of cases which on their face have alleged plausible violations of the Lanham Act." *Bose Corp.*, 334 F.R.D. at 517, n.6.

Importantly, such impediments would also reduce the ability of Plaintiffs and other brand owners to effectively protect their intellectual property rights and consumers in a cost-effective manner. This is especially true in the context of online counterfeiting. Indeed, due to the

overwhelming number of sellers engaging in the counterfeiting conduct identified by Plaintiffs' Complaint, requiring Plaintiffs to file a separate suit with a separate filing fee with separate costs associated with each case is simply impossible. By requiring Plaintiffs to undertake such a monumental task, Plaintiffs will be effectively left without any realistic procedural vehicle to enforce its intellectual property rights.

Cases like the present case are one of the few effective mechanisms for stopping and deterring online counterfeiting. In sum, Plaintiffs' well-pleaded allegations establish that the named Defendant Seller ID's are participating in the same unlawful occurrence or series of occurrences and that joinder is proper. Plaintiffs (as well as other brand owners) would be severely prejudiced if it were required to file separate lawsuits simply because Defendants registered a particular e-commerce store using a different Defendant Internet Store. *Shambour v. Carver County*, Civ. No. 14–566 (RHK/LIB), 2014 WL 3908334, at *6 (D. Minn. Aug. 11, 2014) ("In the matter at hand, joinder is proper because the alleged acts similarly support a larger allegation of a systemic problem and the Court is persuaded that keeping Shambour's claims together is not only permissible but preferable.").

      **F.**      **At a Minimum, The Court Should Grant Leave to Amend the Complaint.**

If the Court is inclined to find that the current pleading does not plead sufficient facts to support joinder under Fed. R. Civ. P. 20, Plaintiffs respectfully request leave to amend the Complaint to include additional allegations supporting joinder. Specifically, Plaintiffs can amend the current pleading to further show that many of the defendants share unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between them supporting Plaintiffs' information and belief that many of these Defendants' illegal operations arise out of the same transaction, occurrence, or series of

transactions or occurrences. For example, many of the item titles, descriptions, and/or advertising images used by various Defendant Seller ID's are nearly identical to one another suggesting common persons or entities behind these ID's or at least a coordinated effort between these defendants to sell the DURAN DURAN counterfeit goods. *See, e.g.*, **Exhibit 3** attached hereto and collecting representative samples of listings from Defendant storefronts currently identified on the Complaint's Schedule "A."

In addition, Plaintiffs would be amenable to severing the present case so that the Defendants are grouped by the specific platform through which they engage in their counterfeiting and infringing activities. For example, in the matter at hand, Plaintiffs propose to file a separate case for those Defendants transacting illicit sales through Wish,[3] a separate case for those Defendants transacting illicit sales through Amazon, a separate case for those Defendants transacting illicit sales on Redbubble, and a separate case for those Defendants transacting illicit sales on eBay.

### III. CONCLUSION

For the reasons set forth above, joinder of Defendants is proper. This approach is consistent with other courts and comports with the strongly encouraged policy of entertaining the broadest possible scope of action consistent with fairness to the parties.

Date:   August 5, 2022                               Respectfully submitted by,

                                                     THE BRICKELL IP GROUP, PLLC
                                                     1101 Brickell Avenue
                                                     South Tower, Suite 800
                                                     Miami FL, 33131
                                                     Tel: 305-728-8831 | Fax: 305-428-2450

---

[3] Because a significant number of the Defendants in this matter are transacting sales through Wish (*i.e.,* 695 Defendants), Plaintiffs further propose to sever these Wish Defendants into two separate cases.

*/s/ Richard Guerra*
Richard Guerra
Fla. Bar No. 689521
Email: rguerra@brickellip.com
A. Robert Weaver
Fla. Bar No. 92132
Email: rweaver@brickellip.com

*Counsel for Plaintiffs*
